UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-04001-CAS-RAOx | Date | October 16, 2026 |
| Title | Texco, Inc. v. Mon Cheri Bridals, LLC et al | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| | | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Dkt. 21, filed on July 27, 2026)

## I. INTRODUCTION

On April 15, 2026, plaintiff Texco, Inc. ("Texco") filed this action against defendants Mon Cheri Bridals, LLC d/b/a "Colette by Daphne" ("Mon Cheri"), Adasa Ltd Inc. d/b/a "Adasa" and "Couture Candy" ("Adasa"), Kotsovos, Inc. d/b/a "Kotsovos" ("Kotsovos"), New Occasions Brands, LLC d/b/a "PromGirl" ("PromGirl"), The Dress Outlet, Inc. d/b/a "The Dress Outlet" ("Dress Outlet"), VIP Fashion, Inc. d/b/a "VIP Fashion" ("VIP"), and Does 1 through 30, inclusive (collectively, "defendants"). Dkt. 1 ("Compl."). Texco alleges three claims for relief against all defendants pursuant to the Copyright Act of 1976, Title 17 U.S.C., §§ 101 *et seq.*: (1) copyright infringement, (2) contributory copyright infringement, and (3) vicarious copyright infringement. Id.

On April 24, 2026, this Court dismissed Does 11 through 30, inclusive, pursuant to L.R. 19-1, which states that "[n]o complaint or petition shall be filed that includes more than ten (10) Doe or fictitiously named parties." Dkt. 15.

On July 27, 2026, defendants moved to dismiss Texco's complaint. Dkt. 21 ("Motion" or "Mot."). On August 31, 2026, Texco filed an opposition. Dkt. 28 ("Opp."). On September 8, 2026, defendants filed their reply. Dkt. 29 ("Reply").

Finding that the instant Motion is appropriate for decision without oral argument, the Court took the matter under submission on September 29, 2026. Dkt. 32; see Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| Case No. | 2:26-cv-04001-CAS-RAOx | Date | October 16, 2026 |
|---|---|---|---|
| Title | Texco, Inc. v. Mon Cheri Bridals, LLC et al | | |

## II. BACKGROUND

The action arises from defendants' alleged infringement of Texco's copyrighted artwork created for garment production.

### A. The Parties

Plaintiff Texco is a California corporation organized with a principal place of business in California. Compl. ¶ 4.

Defendant Mon Cheri is a Delaware limited liability company with a principal place of business in Trenton, New Jersey. Id. ¶ 5.

Defendant Adasa is a Delaware corporation with a principal place of business in Las Vegas, Nevada. Id. ¶ 6.

Defendant Kotsovos is an Ohio corporation with a principal place of business in Cincinnati, Ohio. Id. ¶ 7.

Defendant PromGirl is a Delaware limited liability company with a principal place of business in New York, New York. Id. ¶ 8.

Defendant Dress Outlet is a California corporation with a principal place of business in Los Angeles, California. Id. ¶ 9.

Defendant VIP is a Pennsylvania corporation with a principal place of business in Ivyland, Pennsylvania. Id. ¶ 10.

### B. The Alleged Infringement

Texco alleges that it created an original two-dimensional artwork for use in garment production, identified by its internal design number P-613 (the "Subject Design"). Id. ¶ 13. Texco alleges that it exclusively owns the Subject Design and holds a United States copyright registration predating defendants' alleged infringement. Id. ¶¶ 13-14.

Before the alleged infringement, Texco alleges that it sampled and sold fabric bearing the Subject Design to numerous entities in the fashion and apparel industries. Id. ¶ 15. Texco alleges that it subsequently discovered that certain entities within those

industries had misappropriated the Subject Design and were selling fabric and garments bearing unauthorized reproductions or derivative versions of the Subject Design to the public. Id. ¶ 16.

Texco alleges on information and belief that defendants were such entities that "created, sold, manufactured, caused to be manufactured, imported and/or distributed fabric and/or garments (the "Offending Products") comprised of fabric bearing unauthorized reproductions of the Subject Design to the public, including, but not limited to customers in California and this District." Id. ¶ 17. Texco includes photo comparisons of the Subject Design and exemplars of the Offending Products in its Complaint. See Id. ¶ 19.

Texco alleges that defendants, "and each of them, had access to the Subject Design including, without limitation, through (a) access to Texco's showroom and/or design library; (b) access to illegally distributed copies of the Subject Design by third-party vendors and/or DOE Defendants, including without limitation international and/or overseas converters and printing mills; (c) access to Texco's strike-offs and samples, and (d) garments manufactured and sold to the public bearing fabric lawfully printed with the Subject Design by Texco for its customers." Id. ¶ 23.

Texco alleges that defendant Mon Cheri received notice of Texco's ownership of the Subject Design "as far back as August 2025, but the Offending Products remain for sale through the Retailer Defendants and other retailers around the country." Id. ¶ 31.

### C. Group Pleading in the Complaint

#### 1. Terminology

Texco refers to defendants Adasa, Kotsovos, PromGirl, Dress Outlet, and VIP as "Retailer Defendants," and refers to *all* defendants (i.e., Mon Cheri, Adasa, Kotsovos, PromGirl, Dress Outlet, VIP, and Does 1 through 10) as "Defendants." Id. ¶¶ 10, 11.[1]

#### 2. Alleged Business Relationship Between Defendants

Texco alleges on information and belief that "at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego,

[1] The Court adopts the same shorthand in this Order.

and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Texco's rights and the damages to Texco proximately caused thereby." Id. ¶ 12.

3. Alleged Roles of Defendants

Texco alleges that "one or more of the Defendants manufactures garments and/or is a garment vendor." Id. ¶ 24.

Texco further alleges that "said Defendant(s) has an ongoing business relationship with Defendant Retailers, and each of them, and supplied garments to said retailers, which garments infringed the Subject Design in that said garments were composed of fabric which featured unauthorized print design(s) that were identical or substantially similar to the Subject Design, or were illegal derivations or modifications thereof." Id.

*a. Direct Infringement*

Texco alleges that "Defendants, and each of them, infringed Texco's copyrights by creating, making, and/or developing directly infringing and/or derivative works from the Subject Design and by producing, distributing and/or selling garments which infringe the Subject Design through a network of retail stores, catalogues, and through on-line websites." Id. ¶ 25. Texco alleges that such acts of copyright infringement were "willful, intentional and malicious." Id. ¶ 29.

*b. Contributory Infringement*

Texco alleges that "Defendants committed contributory copyright infringement with actual knowledge or reckless disregard of Texco's rights such that said acts of copyright infringement were, and continue to be, willful, intentional and malicious." Id. ¶ 33.

*c. Vicarious Copyright Infringement*

Texco alleges that "Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing

conduct." Id. ¶ 38. Specifically, Texco alleges that "Defendants, and each of them, profited in connection with the Offending Products, and were able to supervise the reproduction, distribution, broadcast, and publication of the Offending Products." Id.

## III. LEGAL STANDARD

### A. Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant submits evidence controverting the allegations, however, the plaintiff may not rely on its pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977)).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154-55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state and federal law are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and must do so to establish specific jurisdiction. Schwarzenegger, 374 F.3d at 802.

If the plaintiff establishes the first two prongs, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) "the extent of the defendant's purposeful injection into the forum"; (2) the burdens on defendant from litigating in the forum state; (3) "the extent of conflict with the sovereignty of the defendant's state," (4) "the forum state's interest in adjudicating the dispute"; (5) "the most efficient judicial resolution of the controversy"; (6) "the importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) "the existence of an alternative forum." Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995).

**B. Rule 12(b)(6)**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be

plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

"A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint." PageMelding, Inc. v. ESPN, Inc., No. 11-cv-06263, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

**C. Rule 8(a)(2)**

Rule 8(a)(2) requires every "pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

There are four main types of shotgun pleadings which contravene Rule 8: "(1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Gibson v. City of Portland, 165 F.4th 1265, 1287-88 (9th Cir. 2026) (citing 35A C.J.S. Fed. Civ. Proc. § 310 (2025) and 61A Am. Jur. 2d Pleading § 159 (2025)). Shotgun pleadings undermine a fundamental purpose of Rule 8, which is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief. Gibson, 165 F.4th at 1289-90.

District courts do not have to accept shotgun pleadings. Id. “It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts.” Id. A district court has the “inherent authority to control its docket and ensure the prompt resolution of lawsuits,” which includes the ability to dismiss a complaint on shotgun pleading grounds. Id. (citing Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018)); see Dietz v. Bouldin, 579 U.S. 40, 47 (2016) (“[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.”); Spurlock v. F.B.I., 69 F.3d 1010, 1016 (9th Cir. 1995) (stating that a district court has “inherent power over the administration of its business [and] inherent authority to . . . enforce rules for the management of litigation” (citations omitted)).

Dismissals on shotgun pleading grounds are reviewed for an abuse of discretion. Gibson, 165 F.4th at 1295.

## IV. DISCUSSION

Defendants move to dismiss Texco’s Complaint, arguing that: (1) there is no personal jurisdiction over non-California defendants Mon Cheri, Adasa, Kotsovos, PromGirl, or VIP; (2) Texco’s Complaint relies on an improper group pleading in violation of Rule 8(a)(2); and (3) Texco fails to state a copyright infringement claim against any defendant. See generally Mot.

Texco counters that: (1) this Court has personal jurisdiction over Dress Outlet and Mon Cheri and that, at minimum, targeted jurisdictional discovery is warranted as to the remaining defendants; (2) the Complaint satisfies Rule 8(a)(2); and (3) the Complaint adequately pleads actionable copyright infringement. See generally Opp.

For reasons given below, the Court concludes that it has personal jurisdiction over defendants Dress Outlet and Mon Cheri and that jurisdictional discovery as to the remaining defendants is unwarranted. The Court further concludes that Texco’s Complaint fails to comply with Rule 8(a)(2). Accordingly, the Court dismisses the Complaint with leave to amend on that basis without reaching defendants’ alternative arguments under Rule 12(b)(6).

**A. Rule 12(b)(2)**

1. General Jurisdiction

The parties appear to agree that this Court has general jurisdiction over Dress Outlet and that it does not have general jurisdiction over the remaining defendants: Mon Cheri, Adasa, Kotsovos, VIP, and PromGirl (collectively, "Non-California defendants). See Mot. at 6-12; Opp. at 4-11.

Accordingly, the Court concludes that Dress Outlet is the only defendant over which the Court has general jurisdiction.

2. Specific Jurisdiction

Defendants argue that the Complaint's allegations fail to establish specific jurisdiction over any of the Non-California defendants. Mot. at 6-12. Defendants additionally set forth evidence that, aside from Mon Cheri, none of the other Non-California defendants sold any product bearing Texco's Subject Design in California. Id. at 9 (citing Declarations of Jon Liney at ¶ 12, Eric Jones at ¶¶ 13,14, Christos Kotsovos at ¶¶ 13,14, David Wilkenfeld at ¶¶ 13,14, Anna Pristatskiy at ¶¶ 13,14, and Judith Somekh at ¶¶ 10,11).

In opposition, Texco argues that this Court has specific jurisdiction at least as to Mon Cheri. Opp. at 4-9. As to the other four Non-California defendants (i.e., Adasa, Kotsovos, VIP, and PromGirl), Texco does not affirmatively argue or demonstrate in its brief that this Court has specific jurisdiction over them. See generally id. Rather, Texco argues that it should be afforded jurisdictional discovery as to those four defendants should the Court conclude that the present record does not establish specific jurisdiction over them. Id. at 11-13.

Therefore, the Court first analyzes whether it has specific personal jurisdiction over Mon Cheri, then addresses the parties' arguments regarding the other defendants.

*d. Mon Cheri*

Defendants appear to concede that Texco's claims against Mon Cheri arise out of Mon Cheri's forum activities and that Mon Cheri purposefully directed its activities toward this forum. See generally Mot. and Reply. Defendants, however, argue that it would be "unreasonable" for this Court to exercise specific jurisdiction over Mon Cheri

because Mon Cheri only made $2,000 in "*de minimis* sales" of the Offending Products in this forum.[2]

As such, the specific personal jurisdiction inquiry as it pertains to Mon Cheri appears to turn on the reasonableness prong of the three-part specific personal jurisdiction test. The Court nonetheless addresses all three prongs and concludes that it has specific personal jurisdiction over Mon Cheri.

The first prong may be satisfied with facts sufficient to show "either purposeful availment or purposeful direction." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). Where, as here, a plaintiff "has alleged copyright infringement, a tort-like cause of action, purposeful direction 'is the proper analytical framework.'" Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting Brayton Purcell, 606 F.3d at 1128). To find purposeful direction, a plaintiff must demonstrate that the defendant: "(1) commit[ted] an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." Briskin v. Shop?, Inc., 135 F.4th 739, 751 (9th Cir. 2025) (citing Brayton Purcell, 606 F.3d at 1128). All three elements must be satisfied to find purposeful direction.

Here, Texco alleges that all defendants, including Mon Cheri, "created, sold, manufactured, caused to be manufactured, imported and/or distributed fabric and/or garments" bearing its Subject Design ("Offending Products") without authorization in California and that such acts were "willful, intentional, and malicious." Compl. ¶¶ 17, 18. Those factual allegations are sufficient to establish purposeful direction. See Morgan v. McMillin, 634 F. Supp. 3d 846, 853 (C.D. Cal. 2022). Furthermore, defendants' own evidence confirms that Mon Cheri earned $2,235.10 in revenue from selling nine units of the Offending Products in California. Dkt. 21-4 ¶ 12.

To the extent that defendants seek to minimize those transactions in California as "*de minimis*" and as "just nine units [of sale]," neither the number of sales nor the proportion of Mon Cheri's nationwide business that those California sales represent alters

[2] Although defendants in their Motion assert that Mon Cheri made $2,000 in sales of products bearing Texco's subject design in California, Mot. at 9-11, the Court notes that the cited declaration shows that Mon Cheri actually made $2,235.10 in California revenue, see dkt. 21-4 ¶ 12.

the Court's purposeful direction analysis. Mot. at 8, 11. Indeed, the Ninth Circuit has expressly held that "[t]he outcome of the express-aiming inquiry does not depend on the number of sales made to customers in the forum" because "[d]rawing a line based on the number of sales would require an arbitrary distinction that is not preferred in this area of the law." Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1095 (9th Cir. 2023). Moreover, "[a]s Keeton demonstrates, there is no 'small percentage of sales' exception to the purposeful direction principles discussed herein." Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd., 11 F.4th 972, 981 (9th Cir. 2021) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984). Rather, the relevant inquiry is whether Mon Cheri's contacts with the forum state were deliberate—i.e., not "random, isolated, or fortuitous," and defendants have not countered Texco's allegation that Mon Cheri's contacts were deliberate with any evidence. Keeton, 465 U.S. at 774. As such, the Court finds that the first prong is satisfied.

Under the second prong of the specific personal jurisdiction analysis, the Court must assess whether plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021) (internal quotation marks omitted). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." Id. at 362; see In re Western States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 742 (9th Cir. 2013) ("[A] lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." (citations omitted)). Interpreting Ford, the Ninth Circuit has provided the following guidance on the "relate to" prong: (1) "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts"; (2) "a plaintiff's injury relates to a defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff"; and (3) "relatedness requires a close connection between contacts and injury." Yamashita v. LG Chem, Ltd., 62 F.4th 496, 505-06 (9th Cir. 2023).

Here, there is a clear jurisdictional tether between Mon Cheri's contacts in the forum state and the causes of action in this action because "the forum contacts are nine sales of the very products sued upon." Opp. at 8. Therefore, the Court finds that the second prong is satisfied.

Finally, the Court addresses the third prong: reasonableness. The burden is on defendants to present a "compelling case that the exercise of jurisdiction would not be reasonable." Menken v. Emm, 503 F.3d. 1050, 1057 (9th Cir. 2007). As noted above, this prong requires the Court to balance seven factors: (1) "the extent of the defendant's purposeful injection into the forum"; (2) the burdens on defendant from litigating in the forum state; (3) "the extent of conflict with the sovereignty of the defendant's state," (4) "the forum state's interest in adjudicating the dispute"; (5) "the most efficient judicial resolution of the controversy"; (6) "the importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) "the existence of an alternative forum." Ziegler, 64 F.3d at 475.

Here, defendants' reasonableness challenge (as it pertains to Mon Cheri) rests entirely on three arguments: (1) Mon Cheri had not "anticipated being haled into California for this dispute" based on approximately $2,000 in revenue through "just nine units [of sale of Offending Products]" in California; (2) it is both "burdensome and inefficient" for Mon Cheri to litigate in California because it is not located in California; and (3) although California may have an interest in this action as Texco's home forum, a "mere preference for a home forum is not enough where, as here, [Mon Cheri] [has] not purposefully interjected [itself] into California." Mot. at 11-12.

As discussed above, Mon Cheri purposefully directed its conduct at California. Thus, this Court need not separately analyze the first factor. See Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) ("In light of the first prong of purposeful [direction], analysis of this first factor in the third prong would be redundant."); Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988) ("The factor of purposeful interjection is analogous to the purposeful direction analysis."). Accordingly, for the same reasons supporting the finding of purposeful direction, the Court concludes that this factor weighs in favor of jurisdiction. See Impossible Foods Inc. v. Impossible X LLC, 80 F.4th 1079, 1099 (9th Cir. 2023).

Next, while a foreign defendant's burden in litigating in California is a factor, "unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." Panavision, 141 F.3d at 1323 (internal quotation marks omitted). Here, the burden on Mon Cheri to litigate in California is not so great as to deprive it of due process. "With the advances in transportation and telecommunications and the increasing interstate practice of law, any

burden of litigation in a forum other than one's residence is substantially less than in days past." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1080 (9th Cir. 2011) (internal citations, quotation marks, and alterations omitted). This factor thus weighs in favor of exercising jurisdiction. See Mendoza v. Fenix Ammunition LLC, 2024 U.S. Dist. LEXIS 127244, at *20 (C.D. Cal. July 18, 2024).

Finally, defendants' argument regarding the fourth factor—i.e., "the forum state's interest in adjudicating the dispute"—relies entirely on their contention that Mon Cheri has not purposefully interjected itself into California. Mot. at 12. Because this Court has already determined that Mon Cheri has purposefully interjected itself into California, it finds that defendants' argument on this factor fails.

No factors defendants discuss in their Motion weigh against exercising jurisdiction over Mon Cheri, and defendants have failed to carry their burden to present a compelling case that the exercise of jurisdiction would be unreasonable here. As such, the Court finds that the third prong is satisfied.

Accordingly, the Court concludes that it has specific personal jurisdiction over Mon Cheri.

*e. Adasa, Kotsovos, VIP, and PromGirl*

Although Texco alleged in its Complaint that all defendants have done "business in and with the State of California and this District," Compl. ¶¶ 5-10, defendants have put forth evidence to the contrary, see generally Mot. Specifically, defendants have shown that Kotsovos, Adasa, and VIP have never made any sales of the Offending Products in California and that Dress Outlet and PromGirl have "simply never actually sold the Offending Products" anywhere. Mot. at 9 (citing Declarations of Jon Liney at ¶ 12, Eric Jones at ¶¶ 13,14, Christos Kotsovos at ¶¶ 13,14, David Wilkenfeld at ¶¶ 13,14, Anna Pristatskiy at ¶¶ 13,14, and Judith Somekh at ¶¶ 10,11).

Therefore, the Court finds that the specific personal jurisdiction inquiry as to these defendants falters at the first prong—i.e., purposeful direction.

However, Texco argues that, should the Court so determine, Texco should be afforded jurisdictional discovery as to those four defendants. Opp. at 11-13. Texco specifically argues that defendants rely on "summary declarations" to prove that the four remaining defendants have not sold Offending Products in California and that Texco

should not be required to accept such declarations "in lieu of the business records from which those summaries supposedly derive." Id.

In reply, defendants argue that "[w]ith the exception of Mon Cheri, the [n]on-California [d]efendants have demonstrated the absence of any sales in California" and that Texco now "pins its hopes to speculation that the Non-California Defendants nonetheless *could* have sold to California." Reply at 5 (emphasis in original). Defendants further argue that "[j]urisdictional discovery is not appropriate under such circumstances" and that Texco's request can be properly denied as "a fishing expedition in search of a jurisdictional hook." Id. (quoting Spy Optic, Inc. v. AreaTrend, LLC, 843 Fed. App'x 66, 69 (9th Cir. Jan. 22, 2021)).

"Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008). But discovery is not appropriate where it is based "on little more than a hunch that it might yield jurisdictionally relevant facts." Id. "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." Pebble Beach Co., 453 F.3d at 1160.

Here, the Court finds that jurisdictional discovery is not warranted. Texco requests discovery into: (i) California offers, orders, sales, and shipments involving the Offending Products; (ii) purchase-order and inventory records for those styles; (iii) Mon Cheri drop-ship requests and destination data involving those styles; (iv) website order records involving California consumers and those styles; and (v) the records underlying each declarant's assertions concerning the Offending Products. Opp. at 11-12. Through such discovery efforts, Texco hopes to "test [defendants'] declarations" that the four non-California defendants never sold any Offending Products in California, given that "[d]efendants' own evidence confirms a distribution system capable of moving Mon Cheri dresses from Mon Cheri to each retailer, and when requested, directly from Mon Cheri to the retailer's customer." Id. Texco thus effectively operates on mere suspicion that defendants may have lied or misrepresented that the four non-California defendants have never sold any Offending Products in California. This is insufficient to warrant jurisdictional discovery. See Butcher's Union, 788 F.2d at 540 (mere "belief" and "speculation" do not justify jurisdictional discovery).

Accordingly, the Court **DENIES** Texco’s request for jurisdictional discovery as to Adasa, Kotsovos, VIP, and PromGirl, and **DISMISSES** those four defendants without prejudice and with leave to amend within fourteen (14) days.

### B. Rule 8(a)(2)

The Court has found that it has jurisdiction over defendants Mon Cheri and Dress Outlet and next addresses those defendants’ argument that Texco’s Complaint relies on “improper group pleading” in violation of Fed. R. Civ. P. 8(a)(2).

Defendants specifically argue that the Complaint “does not permit either the Court or the various [d]efendants to fairly know which are alleged to have directly infringed, which are alleged to be contributorily liable, which are alleged to be vicariously liable, or what facts purportedly support those theories.” Mot. at 13. Defendants present as examples, the following: (1) Texco’s first claim alleges “collectively that all Defendants had access to the Subject Design, copied it, and sold infringing products”; (2) Texco’s second claim “then alleges collectively that all [d]efendants ‘knowingly induced,’ ‘participated in,’ and ‘aided and abetted’ infringement, yet identifies no affirmative act undertaken by any specific [d]efendant”; and (3) Texco’s third claim “likewise alleges collectively that all [d]efendants possessed the right and ability to supervise infringement and had a direct financial interest in it, without identifying which [d]efendant supposedly controlled whom or through what relationship.” Id. Defendants argue that, as pled, “every [d]efendant is simultaneously accused of manufacturing, importing distributing, and retailing the accused products, without any factual allegations supporting those conclusions.” Id. Defendants argue that this Court should dismiss such “shotgun pleading” because they “should not be forced to proceed with nothing more than a guess as to what each is exactly alleged to have done.” Id. at 14.

In opposition, Texco argues that its Complaint “identifies the separate role of each group of [d]efendants: Mon Cheri is alleged to manufacture and distribute the garments, while the Retailer Defendants are alleged to distribute, sell, and offer them through their respective retail channels.” Opp. at 14. Texco further argues that its Complaint sufficiently gave defendants fair notice and that defendants’ instant motion confirms the point because, in it, defendants “plainly understand which work is at issue, which three garments are accused, which entity manufactured them, which entities retailed them, and which theories Texco asserts.” Id. at 15.

The Court concludes that Texco's Complaint violates Rule 8. Texco alleges three claims for relief "[a]gainst *[a]ll* [d]efendants, and *[e]ach*." Compl. at 9-14 (emphasis added). As pled, each and every defendant is alleged to be liable for direct infringement, contributory infringement, and vicarious infringement. Moreover, each and every defendant is alleged to be "the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining [d]efendants." Compl. ¶ 12. It is thus unclear which defendant committed which specific acts, which defendant is liable for which claim, and which defendant(s) is the principal and which are the agents so as to enable the Court and defendants to decipher the alleged factual basis for vicarious liability. See Gibson v. City of Portland, 165 F.4th 1265, 1271 (9th Cir. 2026) (holding that a complaint violated Rule8(a)(2) because "the complaint merely alleged the 'defendants' deprived them of various constitutional and statutory rights, leaving to Defendants, the district court, and [the Ninth Circuit] to decipher the details"); McHenry v. Renne, 84 F.3d 1172, 1174 (9th Cir. 1996) (affirming a district court's dismissal of a complaint on Rule 8 grounds where the complaint did not specify "which of the twenty named defendants or John Does is liable for which of the wrongs").

Courts in this Circuit routinely dismiss such shotgun pleadings that fail to specify which defendant is liable for which claim. See, e.g., Sollberger v. Wachovia Sec., LLC, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (dismissing complaint for failure to differentiate between defendants and explaining that "[o]ne common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong"); Bostick v. Intuit, Inc., 2026 WL 2677271, at *5 (S.D. Cal. Sept. 11, 2026) (dismissing complaint because "[p]laintiff refer[red] only to 'defendants' collectively in his causes of action" and did not specify "what each [d]efendant did").

To the extent that Texco relies on Briskin v. Shopify, Inc., 135 F.4th 739 (9th Cir. 2025), that case is distinguishable. Although the Ninth Circuit in that case permitted collective pleading against closely related corporate defendants, it did so where the complaint alleged a jointly pursued course of conduct, "generally describe[d] each [defendant's] role" in the alleged data collection and monetization scheme, and provided "highly detailed" allegations of the underlying conduct. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-04001-CAS-RAOx | Date | October 16, 2026 |
| Title | Texco, Inc. v. Mon Cheri Bridals, LLC et al | | |

Here, although Texco maintains that its Complaint "identifies the separate role of each group of [d]efendants" because "Mon Cheri is alleged to manufacture and distribute the garments [and] the Retailer Defendants are alleged to distribute, sell, and offer them through their respective channels," Opp. at 14, nowhere in the Complaint does Texco actually make that distinction in their respective roles clear—not even in the paragraphs Texco cited for that proposition.[3]

Paragraph 17 of the Complaint, for instance, merely states in relevant part that "*Defendants* created, sold, manufactured, caused to be manufactured, imported and/or distributed fabric and/or garments." Compl. ¶ 17 (emphasis added). Yet, critically, in paragraph 11, Texco had previously defined "Defendants" to mean *all* defendants, including "Retailer Defendants." Id. ¶ 11. Similarly, paragraph 24 states that "one or more of the *Defendants* manufactures garments and/or is a garment vendor" and that "said Defendant(s) has an ongoing business relationship with Defendant Retailers, and each of them, and supplied garments to said retailers." Id. ¶ 24 (emphasis added). However, again, having defined "Defendants" to include "Retailer Defendants," it is unclear whether (and if so, which) Retailer Defendants are alleged to have an ongoing relationship with which other Retailer Defendants.[4] Paragraph 25 likewise fails to specify which named defendant was responsible for which of Texco's alleged injuries: "Texco is informed and believes and thereon alleges that Defendants, and each of them, infringed Texco's copyrights by creating, making, and/or developing directly infringing and/or derivative works from the Subject Design and by producing, distributing and/or selling garments which infringe the Subject Design through a network of retail stores, catalogues, and through on-line websites." Id. ¶ 25. Nor can the Complaint be described as "highly detailed" as to the alleged methods through which defendants injured Texco

[3] Defendants cite Compl. ¶¶ 5-10, 17, 24-25. Paragraphs 5 through 10 of the Complaint merely identifies defendants' names and corporate domicile information and is irrelevant for purposes of this discussion.

[4] Moreover, nowhere in the Complaint does Texco allege that Mon Cheri specifically is a manufacturer and/or garment vendor. See generally Compl. Rather, the Complaint alleges that all "Defendants created, sold, manufactured, caused to be manufactured, imported and/or distributed fabric and/or garments (the 'Offending Products')." Compl. ¶ 17.

when the Complaint alleges that *all* defendants directly, contributorily, and vicariously infringed Texco's work. Id. at 9-14.

Finally, insofar as Texco contends defendants' ability to identify the allegations against them demonstrates compliance with Rule 8, the Court disagrees. Indeed, even assuming defendants can and have parsed out Texco's allegations and claims, that is still insufficient where the Court must try and do the same. See Gibson, 165 F.4th at 1289 ("It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts.").

Accordingly, the Court **GRANTS** defendants' motion to dismiss for failure to comply with Rule 8 with leave to amend. See Gibson, 165 F.4th at 1290 ("[W]hen district courts identify shotgun pleadings, they should not hesitate to afford such parties one last opportunity to make themselves understood."). The Complaint's failure to comply with Rule 8 is itself a sufficient basis for dismissal. See Renne, 84 F.3d at 1179 ("The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit."). Because the Court dismisses the Complaint with leave to amend on that basis, it declines to reach defendants' alternative arguments pursuant to Rule 12(b)(6).

## V. CONCLUSION

In accordance with the foregoing, the Court finds that it has personal jurisdiction over defendants Mon Cheri and Dress Outlet, but lacks personal jurisdiction over the remaining defendants. The Court finds that jurisdictional discovery is unwarranted over defendants Adasa, Kotsovos, VIP, and PromGirl.

The Court further concludes that the Complaint fails to comply with Rule 8(a)(2) because it does not adequately distinguish among defendants or provide fair notice of the claims asserted against each defendant.

Accordingly, the Court **GRANTS** defendants' motion to dismiss Texco's Complaint against Adasa, Kotsovos, VIP, and PromGirl for lack of personal jurisdiction, **DENIES** Texco's request for jurisdictional discovery as to those four defendants, and **GRANTS** defendants Mon Cheri and Dress Outlet's motion to dismiss on Rule 8 grounds, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-04001-CAS-RAOx | Date | October 16, 2026 |
| Title | Texco, Inc. v. Mon Cheri Bridals, LLC et al | | |

Texco shall file a First Amended Complaint, if any, within fourteen (14) days of this Order.

IT IS SO ORDERED.

| | | | |
|---|---|---|---|
| | 00 | : | 00 |
| Initials of Preparer | CMJ | | |